# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 04-1907

LAWRENCE BOWLDS, JR.,

*Plaintiff-Appellant*,

v.

GENERAL MOTORS MANUFACTURING
DIVISION OF THE GENERAL MOTORS
CORPORATION,

*Defendant-Appellee*.

———————

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:03-CV-5-TS—**Theresa L. Springmann**, *Judge.*

———————

ARGUED OCTOBER 25, 2004—DECIDED JUNE 9, 2005

———————

Before POSNER, KANNE, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Lawrence Bowlds, Jr., a Vietnam veteran and a victim of the Agent Orange skin disease, contracted as a result of his military service on behalf of our country in Vietnam, sued his former employer, General Motors. Mr. Bowlds claimed that he had been improperly denied reemployment with the company in violation of both the Uniformed Services Employment and Reemployment Rights Act ("USERRA") and the Veterans' Reemployment

Rights Act of 1974 ("VRRA").[1] The district court granted summary judgment for General Motors, finding that Mr. Bowlds's claims under the USERRA accrued before the statute's enactment date and that General Motors met its reemployment obligation under the VRRA by rehiring Mr. Bowlds after his return from the Vietnam War. Regrettably, because the USERRA is not retroactive to the time period concerning Mr. Bowlds's claims and the VRRA does not cover an injury incurred after an employer's initial rehiring of an employee, we agree with the findings of the district court and affirm.

## I.  Background

Mr. Bowlds began his employment with General Motors on September 27, 1965, at General Motors' Metal Fabricating Plant in Marion, Indiana. As a result of the Vietnam War, Mr. Bowlds was inducted into the United States Army in January of 1967 and was discharged from active military service in January of 1969. In February of 1969, General Motors reemployed Mr. Bowlds in an hourly position. Shortly after Mr. Bowlds's return from Vietnam, his physician, Dr. Gary Dillon, diagnosed him as suffering from a skin disorder caused by wartime exposure to the chemical commonly known as "Agent Orange," and on August 1, 1977, as a result of Dr. Dillon's recommendation, General Motors placed Mr. Bowlds on total and permanent disability.

Mr. Bowlds's medical condition improved in later years, and on October 6, 1983, Dr. Dillon prepared and signed a note stating that Mr. Bowlds could return to work as long

---

[1] Mr. Bowlds also initially alleged that General Motors violated his rights under the Employee Retirement Income Security Act ("ERISA"). The district court granted summary judgment for the defendant on this claim, and Mr. Bowlds did not appeal this ruling.

as he "perform[ed] clean and dry work whenever available." Mr. Bowlds presented this note to General Motors, who did not respond. On March 19, 1984, Dr. Dillon again wrote to General Motors stating that he had cleared Mr. Bowlds to work. Once again, General Motors did not respond. Finally, on August 24, 1989, Dr. Dillon wrote a third letter to General Motors on Mr. Bowlds's behalf. On September 5, 1989, General Motors rehired Mr. Bowlds as a tow motor operator. On May 1, 2002, Mr. Bowlds retired from General Motors.

Two of General Motors' actions taken during Mr. Bowlds's employment with the company, initial disability retirement, rehiring, and subsequent retirement are at issue: first, whether General Motors violated the USERRA and the VRRA by failing to rehire Mr. Bowlds in 1983, when Dr. Dillon initially declared that he could return to work; and second, whether General Motors violated these same statutes by its calculation of Mr. Bowlds's retirement pension in 2002. General Motors based Mr. Bowlds's pension on service to the company of 24.8 years, which includes the period from Mr. Bowlds's initial hiring in 1965 through his initial disability retirement in 1977, as well as Mr. Bowlds's service to General Motors from his rehiring in 1989 through his final retirement in 2002. Mr. Bowlds argues that his pension should be based on 36.7 years, which in addition to the 24.8 years that General Motors has acknowledged would also include the period from 1977 through 1989 when Mr. Bowlds was on disability retirement.

On General Motors' Motion for Summary Judgment, the district court held that the USERRA did not apply to Mr. Bowlds's claims for reemployment between 1983 and 1989, further determining that even if the USERRA did apply to Mr. Bowlds's claim, no reasonable reading of that statute mandated that an employer reemploy a veteran for a medical leave of absence related to prior military service. The district court concluded that although Mr. Bowlds's claims did arise under the VRRA, that statute was also in-

applicable to Mr. Bowlds's claims for the same reasoning as the USERRA. Finding that General Motors had violated neither the USERRA nor the VRRA by its decision not to re-employ Mr. Bowlds during his disability period, the district court held that General Motors' calculation of Mr. Bowlds's pension also did not violate the USERRA or the VRRA.

## II.  Analysis

### A.  Standard of Review

We review de novo a district court's grant of summary judgment. *Lamers Dairy Inc. v. USDA*, 379 F.3d 466, 472 (7th Cir. 2004); *Ind. Family & Soc. Servs. Admin. v. Thompson*, 286 F.3d 476, 479 (7th Cir. 2002). Summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). When determining whether a genuine issue of material fact exists, we consider evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Material facts are facts that "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over material facts is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### B.  Bowlds's USERRA Claim

One of the purposes of the USERRA and its predecessor, the VRRA, is "to prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a)(3) (2005) (USERRA); *Yates v. MSPB*, 145 F.3d 1480,

1483 (Fed. Cir. 1998); *see also* 38 U.S.C. § 2000(1) (1991)[2] (VRRA) ("alleviating unemployment and underemployment among such veterans is a national responsibility"). The statutes provide that persons inducted into the military shall be reemployed to their former positions within a certain period of time. 38 U.S.C. §§ 4312-4313 (2005); 38 U.S.C. § 2021 (1991).

In the case before us, Mr. Bowlds argues that General Motors violated the USERRA by not reemploying him from 1983 to 1989, when he was on disability retirement. However, as the district court noted, the President signed the USERRA into law on October 13, 1994, and the statute provides that it applies only to reemployment initiated on or after the first day after the sixty-day period beginning on October 13, 1994. Uniformed Services Employment and Reemployment Rights Act of 1994, Pub. L. No. 103-353 § 8(a). Congress has not directed the courts to apply this statute retroactively, and the Supreme Court has held that courts should be extremely hesitant to apply a statute retroactively, where Congress has not expressly mandated such an extension. *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265-75 (1994) (explaining the logic behind this rule and illustrating its proper application). In addition, several of our sister circuits have held that courts should not retroactively apply the USERRA. *E.g.*, *Fernandez v. Dep't of the Army*, 234 F.3d 553, 557 (Fed. Cir. 2000) (holding that retroactive application of the USERRA would "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed" (quoting *Landgraf*, 511 U.S. at 280)); *Newport v. Ford Motor Co.*, 91 F.3d 1164,

---

[2]  Congress re-codified the VRRA in October of 1992. *See* 38 U.S.C. §§ 4301-4307 (1992). To avoid confusion with the codification of the USERRA, we shall cite to the pertinent provisions of the VRRA in accordance with the pre-1992 codification.

1167 (8th Cir. 1996). Mr. Bowlds's USERRA claim clearly accrued well before the application date mandated by Congress. Therefore, his USERRA claim fails.

**C.  Bowlds's VRRA Claim**

Next, Mr. Bowlds argues that the district court erred by holding that General Motors did not violate the VRRA, the USERRA's predecessor, by either its calculation of Mr. Bowlds's pension or its failure to rehire him between 1983 and 1989. In interpreting a statute, we must first begin with the text. *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 739 (1989); *United States v. Miscellaneous Firearms, Explosives, Destructive Devices & Ammunition*, 376 F.3d 709, 712 (7th Cir. 2004). The plain meaning of legislation should be conclusive, except in the "rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." *United States v. Ron Pair Enters.*, 489 U.S. 235, 242 (1989) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571 (1982)) (alteration in original); *see also Pittway Corp. v. United States*, 102 F.3d 932, 934 (7th Cir. 1996) (limiting the courts' function to the enforcement of a statute's terms only where "the statute's language is plain" (quoting *Ron Pair Enters.*, 489 U.S. at 241)).

The VRRA states:

> (a) in the case of any person who is inducted into the Armed Forces of the United States . . . for training and service and who leaves a position . . . in the employ of any employer in order to perform such training and service, and . . . (2) makes application for reemployment within ninety days after such person is relieved from such training and service or from hospitalization continuing after discharge for a period of not more than one year . . . (B) if such position was in the employ of . . . a private em-

> ployer, such person shall—(i) if still qualified to perform the duties of such position, be restored . . . to such position or to a position of like seniority, status, and pay. . . .”

38 U.S.C. § 2021(a) (1991). The VRRA also requires that any person who “enters upon active duty . . . shall, upon [that] person’s relief from active duty under honorable conditions, be entitled to all of the reemployment rights and benefits [described above]. . . .” 38 U.S.C. § 2024(b)(1) (1991).

Mr. Bowlds argues that the skin injury he suffered beginning in 1977 was service related. As such, Mr. Bowlds contends that he never left active duty, for purposes of the VRRA. Therefore, Mr. Bowlds opines that General Motors was obliged to rehire him in 1983, when his doctor initially indicated that he could return to work. To bolster his argument, Mr. Bowlds correctly states that the VRRA does not provide a clear definition of terms such as “active duty” or “such training and service.” Mr. Bowlds also notes that the VRRA fails to provide us with a definition of when a disability is “service related.” Mr. Bowlds asserts that we should incorporate the language from another statute, the Veterans’ Benefits Act, which provides that the term “active military, naval, or air service” includes “any period of active duty for training during which the individual concerned was disabled or died from a disease or injury incurred or aggravated in line of duty.” 38 U.S.C. § 101(24) (1999) (amended 2000). Incorporating the definition of the Veterans’ Benefit Act into the VRRA, according to Mr. Bowlds, extends his “active duty” well beyond his actual discharge from the Army.

This argument is without merit. The terms and phrases in the Veterans’ Benefit Act to which Mr. Bowlds directs us are not found anywhere within the VRRA. Furthermore, the VRRA never purports to create reemployment rights after an employer has already granted the employee disability

leave. The VRRA does not create such a reemployment right even if the employee's current disability is related to his prior military service.

Mr. Bowlds points us to a number of Supreme Court decisions which held that courts are to interpret various veterans' statutes liberally. *E.g.*, *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285 (1946) (holding that courts should liberally construe the Selective Training and Service Act of 1940); *Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196 (1980) (holding that courts should liberally construe the Vietnam Era Veterans' Readjustment Assistance Act of 1974). However, even though these cases have implored courts to construe certain veterans' statutes liberally, they do not instruct courts to create rights out of whole cloth.

General Motors complied with the VRRA. After Mr. Bowlds's military service ended in January 1969, General Motors promptly rehired him—in February 1969—back into an hourly position. Over eight years later, on August 1, 1977, Mr. Bowlds retired on disability. Six years after Mr. Bowlds's retirement, and fourteen years after General Motors had rehired him, his physician wrote a note stating that he could return to work. Nothing in the VRRA required General Motors to rehire Mr. Bowlds in 1983, 1984, or even 1989, the year in which General Motors did rehire Mr. Bowlds. Simply put, by rehiring Mr. Bowlds immediately after his discharge from the Army in 1969, General Motors fulfilled its obligations under the VRRA.

In addition, because General Motors has not violated Mr. Bowlds's reemployment rights under the VRRA, Mr. Bowlds cannot claim that General Motors violated the VRRA by an alleged miscalculation of his pension time. The VRRA requires an employer who has violated the Act to compensate the employee for any "loss of wages or benefits suffered by reason of such employer's unlawful action." 38 U.S.C. § 2022 (1991). However, in order for an employee to

be eligible under the VRRA for any lost wages or (as in this case) pension benefits, there must be some type of employer violation of the Act itself. *Id.* As our analysis details above, General Motors did not engage in any violation of the VRRA.

Although this decision is not favorable towards Mr. Bowlds, we are most sympathetic towards his medical condition. Mr. Bowlds served honorably in Vietnam and contracted a skin ailment as a result of his service there. However, his remedy is not in the VRRA as it is currently written by Congress. In his briefs, Mr. Bowlds notes a number of negative implications for veterans of the law as it is currently written. For instance, Mr. Bowlds presents a hypothetical situation in which a veteran returns from Vietnam with a bullet in his spine and is reemployed by his former company, only to have the bullet shift two weeks later and thus necessitate surgery. After surgery, the veteran again applies for reemployment under the VRRA and is denied by his erstwhile employer. Unfortunately, this is indeed the outcome currently mandated by law. The employer concluded its obligation to the veteran through its initial reemployment action, just as General Motors concluded its obligation to Mr. Bowlds by initially rehiring him in 1969.

Perhaps Congress will amend the VRRA or the USERRA to require employers to reemploy veterans who have recovered from injuries sustained as a result of their military service, even if such injuries occur after the employer has initially reemployed the employee, and several years after the employee has left the military. But this is an issue of public policy, and the onus for a solution lies with Congress, not the courts.

Again, although we are sympathetic to Mr. Bowlds and to all veterans put in situations such as his, the VRRA and USERRA as currently drafted offer him no remedy.

### III. Conclusion

For the reasons stated above, we AFFIRM the district court's grant of summary judgment in favor of General Motors.


A true Copy:

      Teste:


                             _____

                             *Clerk of the United States Court of*
                                *Appeals for the Seventh Circuit*